IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) ) ) | |
| Plaintiff, | ) ) ) | Civ. No. 08-0506-E-BLW |
| v. | ) ) ) ) | MEMORANDUM DECISION |
| U.S. DEPARTMENT OF INTERIOR, | ) ) ) | |
| Defendant. | ) ) ) ) | |

## INTRODUCTION

The Court has before it WWP's motion for attorney fees and costs. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## LITIGATION BACKGROUND

In 2003, the BLM issued grazing permits on the Nickel Creek allotments. Although the allotments had suffered grazing damage over the years, the BLM decided that grazing could continue under a two-part strategy that combined grazing utilization limits with a detailed grazing rotation schedule. *See*

**Memorandum Decision – page 1**

*Memorandum Decision (docket no. 57).*

WWP responded by filing an administrative challenge, alleging that the BLM issued the permits in violation of various environmental laws. An Administrative Law Judge (ALJ) held a 15-day evidentiary hearing on WWP's allegations, and issued a 125-page decision finding that the BLM violated the Fundamentals of Rangeland Health (FRH) regulations and NEPA in issuing the grazing permits. The Interior Board of Land Appeals (IBLA) reversed that decision, and WWP appealed to this Court.

Relying heavily on the record created before the ALJ, this Court reversed the decision of the IBLA. The Court found that the BLM had improperly designated the grazing utilization limits as voluntary guidelines rather than mandatory terms of the permits. WWP also sought reversal of the second prong of the BLM's strategy – the detailed grazing rotation schedule. The Court rejected that argument, relying on expert testimony (developed before the ALJ) that mandatory utilization limits in combination with the rotation schedule would make significant progress toward improving conditions on the allotments. The Court further (1) affirmed the IBLA finding that the BLM adequately discussed the "light-use" alternative; (2) reversed the IBLA's implied holding that the Nickel Creek FFR allotment did not violate FRH regulations; (3) agreed with WWP that the BLM experts appeared to

be biased toward grazing interests, but was compelled by the standard of review to accept the ALJ's decision that the appearance of bias had no actual effect on the BLM's decision.

## ANALYSIS

WWP seeks (1) $183,160 in attorney fees it incurred in litigation at the administrative level; (2) $75,895 in fees it incurred in litigation before this Court; and (3) $1,297 in costs. WWP seeks these fees under the Equal Access to Justice Act (EAJA), which contains two provisions relevant here. The first addresses fee requests for administrative hearings, and is appropriately found in Title 5 of the United States Code (5 U.S.C. § 504(a)(1)), governing administrative matters:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

The phrase "adversary adjudication" means that the United States is represented by counsel, "but excludes an adjudication for the purpose of . . . granting or renewing a license." *Id.* at § 504(b)(1)(C). This exclusionary language was previously cited by the Court in affirming a ruling by the Interior

**Memorandum Decision – page 3**

Board of Land Appeals rejecting WWP's request for fees incurred in an administrative challenge to a grazing permit renewal. *See Memorandum Decision filed June 22, 2009 in WWP v. Interior Board of Land Appeals, Civ. No. 07-498-E-BLW (docket no. 31).*

In addition to this administrative fee provision, the EAJA includes a provision for fees in judicial proceedings, appropriately found in Title 28, which governs the courts. *See* 28 U.S.C. § 2412(d)(1)(A). Under that statute, a court "shall award to a prevailing party" fees and other expenses incurred "in any civil action . . . including proceedings for judicial review of agency action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." There is no exclusion, as there was in § 504, for fees incurred in litigating license issues.

The BLM takes issue first with the administrative portion of WWP's request, totaling $183,160 for fees incurred in the agency hearings. The BLM argues that our prior case – *WWP v Interior Board of Land Appeals*, *supra*, discussed above – rejected a similar request and should be followed here.

However, that case involved only § 504(a)(1); the sole issue was whether WWP was entitled to fees for its work before the agency. In the present case, however, WWP is also seeking fees under § 2412(d)(3). That statute was held in

**Memorandum Decision – page 4**

*Sullivan v. Hudson*, 490 U.S. 877, 892 (1989) to authorize an award of fees incurred not only in judicial proceedings but also in administrative proceedings held following a court-ordered remand. While the facts of *Sullivan* involved a remand, its language covered broader terrain – it interpreted § 2412(d)(3) to authorize fees incurred at the agency level "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees." *Id.* at 888. Having found those requirements satisfied, *Sullivan* awarded fees incurred at the agency level even though those proceedings were not an "adversary adjudication" that would pass muster under § 504. *Id*. at 891 (stating that agency hearing was "not 'adversarial' within the meaning of § 504(b)(1)(C)").

While the agency hearings here *were* an "adversarial adjudication," they end up similarly excluded for another reason: They involved a license renewal. Thus, this case shares with *Sullivan* a party seeking fees under § 2412 incurred in agency hearings that would not qualify for a fee award under § 504.

*Sullivan* holds that § 2412(d)(3) authorizes an award of fees at the agency level – even fees that would not pass muster under § 504 – so long as those agency proceedings were (1) "intimately tied to the resolution of the judicial action," and (2) "necessary to the attainment of the results Congress sought to promote by

**Memorandum Decision – page 5**

providing for fees." *Sullivan,* 490 U.S. at 888.

Both requirements are met here. As explained above, the Court relied heavily on the evidence produced during the fifteen days of hearings before the ALJ. Thus, the administrative proceedings were "intimately tied" to the resolution of the judicial action in this case.

In addition, an award of fees is necessary to further the congressional policy behind the EAJA, the second prong of *Sullivan*. Congress intended the EAJA to address the concern that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Sullivan*, 490 U.S. at 883. To challenge the Nickel Creek permits in this Court, WWP was required by law to create an evidentiary record before the BLM. To require a party to create an extensive and costly evidentiary record at the agency level before proceeding to court, and then to bar them from recouping those costs even if successful in court, would leave them with a pyrrhic victory. Challenges would be snuffed out before they even began. That result is precisely what Congress was trying to avoid with the EAJA.

Because both the requirements of *Sullivan* are met, the Court finds that WWP is not barred by § 504 from seeking fees under § 2412.

The BLM argues next that WWP could have relied on a single attorney rather than the three they employed. The Court disagrees. Most attorneys would need assistance to litigate a 15-day evidentiary hearing against the United States and its formidable resources. The Court can find no waste, redundancy or overkill in WWP's request.

The BLM argues next that the hourly rates charged by WWP's counsel are too high. The EAJA sets a base rate of $125 an hour unless the Court finds that a higher rate is justified by increases in the cost of living or by a special factor such as "the limited availability of qualified attorneys for the proceedings involved." *See* 28 U.S.C. § 2412(d)(2)(A). In a prior decision, the Court has approved a higher rate under these standards for two of WWP's counsel who are now seeking fees: Laird Lucas and Todd Tucci. *WWP v Secrist*, 2006 WL 897718 (D. Idaho March 31, 2006). There, the Court approved rates of $225 an hour for Mr. Lucas and $165 an hour for Mr. Tucci, all for work done in 2004 and 2005.

Mr. Lucas is now seeking $250 an hour for the work he did in the administrative hearings in 2004 through 2007, while Mr. Tucci seeks $200 an hour for that same time period. Mr. Lucas seeks $300 an hour for his work at the judicial level beginning in 2008, while Mr. Tucci seeks $250 an hour for his work during that time.

**Memorandum Decision – page 7**

While the BLM argues that WWP failed to submit evidence that its rates were reasonable, the *Secrist* case sets a baseline for two of the three attorneys in this case. While general inflation would add a minuscule amount to those hourly rates, this District has experienced an explosion of environmental litigation since 2004 that continues today and makes the expertise of these two attorneys much more valuable.

This fact, and the Court's familiarity with the rates charged by counsel in these types of cases, leads the Court to approve the rates sought by Mr. Lucas and Mr. Tucci. The Court makes the same findings with regard to Ms. Havalina and approves her rate of $150 an hour for her work, which was exclusively devoted to the judicial portion of the case.

The BLM argues that the hours spent on the judicial portion of the case by WWP's counsel were excessive. The BLM points out that Laird Lucas and Todd Tucci spent extensive time on the administrative case, and thus could have handled the judicial portion of the case with ease, but instead brought in Ms. Havalina who was not familiar with the case and who spent 244 hours working on the court portion of the case. The Court cannot find, however, that these hours are unreasonable. The BLM vigorously contested WWP's challenges, and the cross-motions for summary judgment and related filings were extensive. The Court finds

the time spent was reasonable and necessary.

The BLM does not dispute that WWP was the prevailing party, and does not argue that its own position was "substantially justified or that special circumstances make an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A). The Court will add $3,120 to the fee award for the fees incurred by WWP since filing the fee application.

Accordingly, for the reasons expressed above, the Court will grant WWP's motion and award them $ 263,472 in fees and costs under 28 U.S.C. § 2412(d)(1)(A). The Court will issue a separate Judgment as required by Rule 58(a).

DATED: **July 20, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge